UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:17-cr-00005-SEB-VTW-01 |
| RALPH T. MINOR, | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [DKT. 71]**

Defendant Ralph T. Minor is charged with several drug crimes arising from evidence obtained from a search of his vehicle and his person after he was stopped for a traffic violation. Now before the Court is Defendant's Motion to Suppress Evidence. An evidentiary hearing was held on October 9, 2019. The Government called Darin Vaugh, Tom O'Neil, and Denver Leverett of the Jeffersonville Police Department as witnesses. Having reviewed the parties' briefings and the evidence adduced at the hearing, we DENY the Motion to Suppress.

**Factual Background**

On the afternoon of October 5, 2016, Detectives Dan Lawhorn and Shaune Davis of the Jeffersonville Police Department conducted an undercover surveillance, focusing on drug-dealing complaints involving Defendant while he was driving a silver 2008 Chevrolet Silverado. The detectives located Defendant sitting in the driver's seat of the suspect vehicle in the 400 block of East 9th Street in Jeffersonville, Indiana. Defendant had engaged in a short meeting with another vehicle displaying a temporary registration

1

before driving away. The detectives relayed all surveillance information to Officer O'Neil, who was located in the immediate area to assist in the investigation. Officer O'Neil also knew that Officer Vaugh, who was serving as an FBI Task Force Officer at the time of Defendant's arrest, had previously made several drug buys from Defendant through a confidential informant.

Detective Lawhorn and Detective Davis maintained constant surveillance of Defendant, the details of which they transferred by radio to Officer O'Neil as Defendant drove away. Officer O'Neil observed Defendant drive left of center while proceeding westbound on East 10th Street and then park facing the wrong direction in the eastbound lane, prompting Officer O'Neil to conduct a traffic stop of Defendant's vehicle. Officer O'Neil approached the driver's window of Defendant's stopped car and requested his driver's license, current registration, and proof of insurance. Defendant was unable to produce proof of insurance. Officer O'Neil testified that he observed what he believed to be several criminal indicators which were not consistent with the innocent motoring public: Defendant began to sweat profusely, avoided eye contact with Officer O'Neil, and was breathing heavily. Based on the totality of the circumstances, Officer O'Neil directed Defendant to exit the vehicle to allow him to review Defendant's license and registration and issue violations for "No Proof of Insurance" and driving "Left of Center."

Meanwhile, Sgt. Leverett, who serves as Officer O'Neil's patrol back up and partner, had been summoned to assist Officer O'Neil with the stop. He arrived with his drug-sniffing dog, Flex, within one minute, according to. Sgt. Leverett's estimate. During the time Officer O'Neil was checking Defendant's license and registration, Sgt. Leverett

performed a narcotics search of the vehicle's exterior utilizing Flex. Flex is trained to alert to methamphetamine, heroin, and cocaine. At the evidentiary hearing, Sgt. Leverett described the process he followed in deploying Flex, which procedures were consistent with his training protocols. Sgt. Leverett first took Flex downwind of the vehicle to allow him to acclimate to his surroundings and clear his olfactory system. Sgt. Leverett then signaled to Flex to begin his search, which involved walking with Flex around the circumference of the vehicle. Flex was on a retractable leash, as usual when on duty, which connects to Sgt. Leverett's waist. Sgt. Leverett did not, nor does he routinely, pull back on the leash or direct Flex. Instead, he lets Flex "take him where Flex takes him."

When Flex approached the front passenger window of the vehicle, which had been left open by a passenger, Flex jumped through the window and displayed a positive alert to the presence of a narcotic odor inside the vehicle. Sgt. Leverett, in response to defense counsel's questions, testified that his was not the first time Flex had jumped through a vehicle's open window to detect narcotics. According to Sgt. Leverett, Flex is trained to "follow his nose" wherever it may take him until he reaches the source of the odor and to give a passive alert, such as sitting down, if he detects narcotics. Here, Flex gave his alert by sitting near the center console of the car. Sgt. Leverett estimated the entire process took about 30 seconds, and both Officer O'Neil and Sgt. Leverett testified that the process was completed before Officer O'Neil had finished writing the traffic citations.

Pursuant to Flex's alert, Sgt. Leverett expanded the search into the vehicle to recover a leafy substance in plain view, which he identified as raw piece of marijuana, located on the rear floorboard lying near the center console. Having determined that the

vehicle was registered to Defendant, Officer O'Neil effectuated an arrest of Defendant for possession of marijuana and provided Defendant his *Miranda* warnings. Defendant was then transported to the Jeffersonville Police Department for further questioning where at his own instigation he voluntarily disrobed, which allowed the officers to recover the following items that were hidden in his underwear:

- $200 cash
- Two cell phones
- Five clear plastic bags of cocaine
- Five clear plastic bags of crystal methamphetamine
- Twenty clear plastic bags of crack cocaine
- Twenty-two clear plastic bags of heroin
- Four amphetamine pills (20 mg)
- Seven oxycodone pills (7.5 mg)
- Four oxycodone pills (15 mg)
- Seven hydrocodone pills (10 mg)
- One hydrocodone pill (7.5 mg)

## **Legal Analysis**

Defendant contends that the warrantless search of the car was illegal under the Fourth Amendment and thus any evidence subsequently seized should be suppressed. While initially providing only boilerplate statements of Fourth Amendment reasonableness principles, Defendant ultimately has raised two issues: whether Officer O'Neil had probable cause to conduct the initial traffic stop, and whether Flex's alert was reliable.[1] Defendant bears the burden of establishing that his Fourth Amendment rights

---

[1] Defendant also disputes Officer O'Neil's assessment of his nervousness. However, his nervousness was not the immediate prompt for the search of the interior of the vehicle and the ultimate discovery of the drugs. His nervousness gave rise to the deployment of Flex, but it was Flex's alert, not Defendant's nervousness, that provided the probable cause allowing Sgt. Leverett to search the vehicle's interior. Defendant's nervousness likely led Officer O'Neil to direct Defendant to exit the vehicle, but that instruction was not unreasonable as officers are

4

were violated. *United States v. Salas*, 979 F.2d 853 (7th Cir. 1992) (*citing Rakas v. Illinois*, 439 U.S. 128 (1978)).

I. **The Traffic Stop**

Where police have probable cause or reasonable suspicion to believe a traffic violation has occurred, the decision to stop a vehicle is reasonable even if the officers were primarily interested in suspected drug crimes. *United States v. Correa*, 908 F.3d 208, 214 (7th Cir. 2018), *reh'g and suggestion for reh'g en banc denied* (Jan. 4, 2019) (*citing Whren*, 517 U.S. at 810); *see also United States v. Rodriguez-Escalera*, 884 F.3d 661, 667 (7th Cir. 2018); *Delaware v. Prouse*, 440 U.S. 648 (1979). An officer's reasonable belief that he has observed a driver committing a traffic infraction, no matter how minor, establishes probable cause to stop the driver without violating the Fourth Amendment. *United States v. Simon*, ___ F.3d ____, 2019 WL 3940958, *5 (7th. Circ. Aug. 21, 2019) (*citing United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005); *Rodriguez-Escalera*, 884 F.3d 661, 667 (7th Cir. 2018) (*citing United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005)).

Defendant primarily argues that there is no direct evidence that he committed a traffic violation, and thus Officer O'Neil's traffic stop was impermissible pretext for the subsequent search. Defendant acknowledges that an officer's decision to stop a vehicle is reasonable when the officer has reasonable suspicion or probable cause to believe that a

---

permitted to order occupants out of vehicles during traffic stops. *United States v. Johnson*, 874 F.3d 571, 573 (7th Cir. 2017), *cert. denied*, 139 S. Ct. 58 (2018) (*citing Pennsylvania v. Mimms*, 434 U.S. 106 (1977)).

traffic violation has occurred. *Heien v. North Carolina*, 574 U.S. 54 (2014); *Whren v. United States*, 517 U.S. 806, 810 (1996). He also acknowledges that the Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law. *Whren*, 517 U.S. 806, 810. ("The temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective."). However, police may not use a traffic stop as a pretext to search for evidence without a traffic violation, says Defendant. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995). Defendant argues that without the alleged traffic violation, the stop was pretextual and unconstitutional.

The Government is not required to prove that Defendant actually committed the traffic violation; this is irrelevant so long as Officer O'Neil had probable cause or reasonable suspicion to think that he did. *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019). Without contrary evidence of the traffic violation, the probable cause determination turns entirely on the credibility of the witnesses. *United States v. Simon*, ___ F.3d ____, 2019 WL 3940958, *5 (7th Cir. Aug. 21, 2019). The testimony of Officer O'Neil, who unequivocally described the lane violation and the parking location/direction as basis of the traffic stop, puts this issue to rest. Having considered the testimony and demeanor of Officer O'Neil at the hearing, and in the absence of any evidence contradicting his testimony, we conclude that probable cause existed for the lawful stop. *Id.*

6

## II. Sgt. Leverett's Deployment of Flex & the Subsequent Search of the Vehicle

A dog sniff of a car's exterior is permitted during a lawful traffic stop, even absent reasonable suspicion of contraband, so long as the dog sniff does not unreasonably prolong the traffic-related mission. *United States v. Simon*, ___ F.3d ____, 2019 WL 3940958, *5 (7th. Circ. Aug. 21, 2019) (*citing Illinois v. Caballes*, 543 U.S. 405, 407 (2005). A dog's alert on a vehicle can provide a rebuttable presumption of probable cause to search the entire vehicle:

> If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs.

*United States v. Simon*, ___ F.3d ____, 2019 WL 3940958, *5 (7th. Circ. Aug. 21, 2019) (*quoting Fla. v. Harris*, 568 U.S. 237, 247 (2013)). The question is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test." *Id.* According to well-settled law, the Fourth Amendment does not require a search warrant prior to conducting a search of a vehicle when police have probable cause to believe that the vehicle contains contraband. *Illinois v. Caballes*, 542 U.S. 405 (2005).

Here, Flex had been certified through a Jeffersonville Police Department program that trained him to detect the presence of narcotics using DEA-certified narcotics. Flex must be recertified through the program every year to serve as a drug-sniffing dog and

had last been certified in March 2016. At the time of Defendant's arrest, Flex had served as a drug-sniffing dog for two years and boasted a perfect record in his training program for both years. His field accuracy is more difficult to quantify, but of the 242 positive alerts Flex has given in his career, 202 resulted in the recovery of narcotics.[2] Even if the remaining 40 alerts were "false," Flex would still have a reliability rate of 83.5%, which is well within the Seventh Circuit's acceptable margin of error. *United States v. Bentley*, 795 F.3d 630, 636 (7th Cir. 2015) (stating that field-accuracy rates as low as 60% are sufficient to support a finding of reliability and thus to support probable cause) (*citing United States v. Holleman*, 743 F.3d 1152, 1157 (8th Cir.2014), *United States v. Green*, 740 F.3d 275, 283 (4th Cir. 2014), and *United States v. Limares*, 269 F.3d 794, 798 (7th Cir. 2001)).

At the evidentiary hearing, defense counsel challenged the evidence of Flex's alert, arguing that he did not believe a well-trained, properly-supervised dog would have jumped through the vehicle's window. Counsel provided no legal or factual support for his assertion, however, nor did he move to reopen the evidence following the hearing as permitted by the Court. The Court's own research revealed that the Seventh Circuit has not addressed whether these circumstances render a search unreasonable. Those circuits that have confronted such facts have unanimously held the searches to be reasonable so

---

[2] As Sgt. Leverett testified, Flex is trained to alert to the odor of narcotics in addition to the presence of actual narcotics. This means that Flex may give a positive alert when narcotics are not actually present but once were and have left a lingering odor. So, Flex may be correctly alerting to the odor of narcotic even if there are no narcotics to be found. It is thus impossible to tell whether Flex is mistaken in an alert or is in fact accurately alerting to an odor.

long as the officers did not request that the window be opened or prompt the dog to jump into the vehicle. *United States v. Sharp*, 689 F.3d 616, 619 (6th Cir. 2012); *United States v. Pierce*, 622 F.3d 209, 213 (3d Cir. 2010); *United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009); *United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007). The facts do not indicate, and Defendant has not argued, that Officer O'Neil or Sgt. Leverett did either.

Defendant has not otherwise specifically challenged the adequacy of Sgt. Leverett's training or experience or of Flex's training, Flex's performance record, or the details of this particular alert. Based on Officer O'Neil's and Sgt. Leverett's testimony as well as Flex's performance records, we conclude that Flex is a well-trained drug-sniffing dog who was properly deployed in these circumstances and whose exterior vehicle search did not unreasonably prolong the traffic stop. Accordingly, his "sniff was up to snuff, providing probable cause to search the entire vehicle.

### III. Defendant's Arrest and Subsequent Body Search

Although no other specific Fourth Amendment issues were raised by Defendant, we find no constitutional concerns with regard to any other aspects of the stop and subsequent arrest that would render them unreasonable.

A warrantless, public arrest is constitutional if the officer had probable cause to believe a suspect committed a crime. *United States v. Velazquez*, 906 F.3d 554, 560 (2018) (*citing United States v. Santana*, 427 U.S. 38, 42 (1976)). After having determined that the vehicle was being driven by Defendant and was registered to him, Officer O'Neil had probable cause to believe Defendant was also the unlawful possessor of the

9

marijuana (an indisputably illegal narcotic in Indiana) that was recovered from the vehicle.

Once lawfully arrested, the officers were permitted to conduct a search incident to arrest of Defendant's person. *United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017) (*citing United States v. Robinson*, 414 U.S. 218 (1973)). Defendant does not dispute that he voluntarily disrobed at the Jeffersonville Police Department; the officers viewed Defendant disrobing as a diversionary tactic to distract law enforcement officers from discovering the drugs stashed in his underwear. Regardless, even if a strip search were conducted, it would have reasonable. A strip or visual body cavity search is justified when there is reasonable suspicion that the arrestee is concealing contraband or weapons. *Campbell v. Miller*, 499 F.3d 711, 717 (7th Cir. 2007). "[N]arcotics possession . . . is the kind of crime that might give rise to a reasonable belief that an arrestee was concealing an item in a body cavity." *Id.* (*internal quotations omitted*) (holding that officers who arrested man for marijuana possession had reasonable suspicion to conduct strip and body cavity search of arrestee). Because Defendant was arrested based on probable cause to believe he was in possession of marijuana, the officers also had reasonable suspicion to conduct a strip search of Defendant. We repeat, however, a strip search was not performed here on Defendant.

Defendant has failed to show any constitutional defects in his stop, search, or arrest. Accordingly, we DENY his Motion to Suppress.

IT IS SO ORDERED.

Date: 10/23/2019

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Frank E. Dahl, III
UNITED STATES ATTORNEY'S OFFICE (Evansville)
frank.dahl@usdoj.gov

Khalid Kahloon
KAHLOON LAW OFFICE
kahloon@msn.com

Lauren Wheatley
UNITED STATES ATTORNEY'S OFFICE (Evansville)
lauren.wheatley@usdoj.gov